**[NOT FOR PUBLICATION]**

[8]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LAWN DOCTOR, INC, | : | |
| Plaintiff, | : | Civil Action No. 07-cv-04735 (FLW) |
| v. | : | |
| PAUL T. BRANON et al. | : | **OPINION** |
| Defendants. | : | |

**WOLFSON, United States District Judge**

     Presently before the Court is the Motion of Defendants, Paul T. Branon, ("Branon"), and Branon Industries Inc. ("Branon Industries") seeking to dismiss the Complaint of Plaintiff, Lawn Doctor, Inc. ("Lawn Doctor") for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Defendant Branon is a former franchisee of Lawn Doctor who argues that Plaintiff has failed to meet its burden of establishing jurisdictional facts through competent evidence and affidavits. Plaintiff contends that it has met its burden of establishing jurisdictional facts through a combination of its pleadings and proffered declarations, which detail the Defendants' forum related contacts with Plaintiff through various telephone calls. Oral argument was held on May 2, 2008, but there was no evidentiary hearing. The Court finds that the

underlying facts alleged by Plaintiff in the Complaint, supplemented by its attached declarations, are sufficient to confer personal jurisdiction over Defendants because Defendants' alleged conduct of tortious interference with contract was directed towards the forum state through Defendant Branon's multiple phone calls to Lawn Doctor. Consequently, the Court denies Defendants' Motion to Dismiss for lack of Personal Jurisdiction, and finds that Plaintiff has met its burden of proof to establish personal jurisdiction over Defendants under the Calder "effects" test.[1]

## I. BACKGROUND

Plaintiff Lawn Doctor is a franchisor of businesses engaging in commercial and residential lawn and yard care, tree and shrub care, pest control and related services. (Ewald Altstadt Decl., at ¶ 3, Dec. 14, 2007). Lawn Doctor is incorporated in New Jersey and has had its corporate offices in New Jersey since it was founded in 1967. (Id.) Defendant Paul T. Branon ("Branon") is a citizen of the Commonwealth of Massachusetts residing in the Town of Acton. (Paul T. Branon Decl. ¶ 2, Nov. 6, 2007). Branon is the sole shareholder of Branon Industries. (Id. at ¶ 4). Beginning in 1979, Branon entered into a total of four franchise agreements with Lawn Doctor (collectively "Branon Franchise Agreements") encompassing territories in Massachusetts and New Hampshire. (Altstadt Decl. ¶ 5). Branon assigned each of these franchise agreements to Branon Industries. (Branon Decl. ¶ 7).

On December 23, 2003, Branon and Branon Industries entered into an Asset

---

[1] Branon is the sole shareholder of Branon Industries. Neither party has separately addressed or distinguished the two Defendants. Accordingly the Court will treat them as the same for purposes of conferring personal jurisdiction.

Purchase Agreement (the "Purchase Agreement") by which the four Lawn Doctor franchises (herein referred to as the "D'Eramo Franchises") were sold to Brandon D'Eramo ("D'Eramo") and D'Eramo Industries for the purchase price of $1 million plus other consideration. (Id. at 10-11). Plaintiff alleges that the other consideration included above market rental payments for office and warehouse space owned by Branon and Branon Industries, a consulting agreement for Branon, an employment contract for Branon's daughter, and payments for a Cadillac Escalade leased by Branon. (Compl. at ¶ 11). D'Eramo paid $100,000 to Branon at the time of the sale. The remaining $900,000 was financed by Branon and Branon Industries, for which D'Eramo gave Branon and Branon Industries a promissory note. (Branon Decl. ¶ 11-13). As additional security for the $900,000 financed by Branon, D'Eramo pledged his stock in D'Eramo Industries, and the assets of D'Eramo Industries, including the D'Eramo Franchises, to Branon. (Id.)

To gain Lawn Doctor's consent for the Purchase Agreement, Branon traveled to Lawn Doctor's headquarters in New Jersey and met with Lawn Doctor's president, Russell Firth. (Russel Firth Decl. at ¶ 3, Dec. 17, 2007). Lawn Doctor permitted D'Eramo's assignment to Branon of the D'Eramo Franchise Agreements as collateral for Branon's loan to D'Eramo. (Branon Decl. ¶ 11-13; Firth Decl. ¶¶ 5, 6). Additionally, Lawn Doctor agreed, under the collateral assignment, that Branon could "step into D'Eramo's shoes" to cure any default under the Franchise Agreement within 30 days after notice of any such default given by Lawn Doctor. (Firth Decl. ¶ 5, 6). In connection with the Purchase Agreement, Lawn Doctor agreed to Branon's request to reduce the transfer fees and to allow Branon to pay the debt he owed to Lawn Doctor over time. (Firth Decl. ¶ 3; Altstadt Decl. ¶ 11). Like the Branon Franchise Agreements,

the D'Eramo Franchise Agreements provided that in return for use of the Lawn Doctor name and marks, methods, techniques, systems and operating procedures, training and business consulting services, D'Eramo agreed to pay Lawn Doctor a royalty and service fee in the amount of 10% of the net revenues of the Lawn Doctor businesses. (Compl. at ¶ 13).

The D'Eramo Franchises did not fare well, and by March 2006, D'Eramo owed Lawn Doctor over $200,000, for which he gave Lawn Doctor a promissory note for $220,454.35. (Id. at ¶ 14). Plaintiff alleges that in November of 2006 Branon assumed substantial executive control of D'Eramo's Lawn Doctor franchises, including control over D'Eramo's business checking account. (Compl. ¶ 15; Altstadt Decl. ¶ 12). Plaintiff further alleges that

> [i]n late 2006, Defendants devised a plan to stop all payments to Lawn Doctor, obtain 'paid-in-full money' from renewal customers of D'Eramo's Lawn Doctor businesses (with no intention to fully perform services), and to divert those funds to themselves, while at the same time forestalling termination of the Lawn Doctor Franchise Agreements by sham negotiations with D'Eramo and Lawn Doctor, and [made] various false representations designed to allay Lawn Doctor's concerns while maximizing Defendants' diversion of the revenues of the Lawn Doctor businesses.

(Compl. ¶ 18; see Altstadt Decl. ¶ 15).

Plaintiff supports these allegations with the declaration of Ewald Altstadt ("Altstadt"), Vice President for Operations and Support Services of Lawn Doctor. In his declaration Altstadt states that he had numerous telephone conversations with Branon between November 2006 and September 2007. (Altstadt Decl. ¶ 14, 15). These communications included a number of phone calls by Branon to Lawn Doctor's toll-free

phone number in New Jersey and a couple of calls made directly to Altstadt's cell phone. (Id.).  Lawn Doctor asserts that during some of these telephone calls Branon urged Lawn Doctor to forestall termination of the franchises while misrepresenting to Lawn Doctor how D'Eramo's business revenues were being spent.  Id. at 14-16.

Lawn Doctor avers that it expressed concern to Branon and D'Eramo regarding D'Eramo's precarious financial situation and advised them to refrain from collecting renewal money from customers for the 2007 season until they had a business plan in place.  (Compl. ¶ 19).  Lawn Doctor also alleges that in exchange for its continued forbearance from terminating the D'Eramo Franchise Agreements, it was agreed that D'Eramo's debt to Branon would not be satisfied in preference to D'Eramo's debt to Lawn Doctor. (Id.).  Lawn Doctor claims that Branon repeatedly told it that there was no money to pay Lawn Doctor, and that only those bills necessary to keep the business alive were being paid.  (Compl. ¶ 20; Altstadt Decl. ¶ 15).

Additionally, in January 2007, Plaintiff alleges that D'Eramo informed it that, contrary to Branon's representations, Branon was preventing D'Eramo from paying royalties to Lawn Doctor, and was instead taking money from Lawn Doctor customers and placing it in his own account to pay off debt for which Branon was personally liable (Altstadt Decl. ¶ 15; Frith Decl. ¶ 7).  Plaintiff also alleges that between April and August 2007, Branon continued to divert customer payments made to the D'Eramo Franchises for his own use and benefit, including depositing checks payable to Lawn Doctor in his own bank account, making his personal car payments and paying his attorneys' fees with the funds. (Compl. at ¶ 24).  Because of these activities, Lawn Doctor contends that the D'Eramo Franchises were unable to remain viable and were shut down on or around

August 21, 2007. (Id.)

In August 2007, Lawn Doctor issued a notice of default to D'Eramo and also provided notice of D'Eramo's default to Branon so that Branon could have the opportunity to cure the default if he wished to do so. (Branon Decl. ¶ 26). Branon did not exercise that option. (Id.) In the fall of 2007, Branon and D'Eramo agreed that, in lieu of foreclosure, Branon would accept the collateral securing the Promissory Note in full satisfaction of the outstanding balance.(Id. at ¶ 27). The collateral accepted did not include the franchise agreements between D'Eramo and Lawn Doctor or D'Eramo's interest in D'Eramo Industries. (Id.)

In its Complaint, Lawn Doctor seeks recovery for its injuries under theories of common law fraud (Count I), negligent misrepresentation (Count II), tortious interference with contract (Count III), and violation of Mass. Gen. Laws Chapter 93A, § 2 (Count IV) prohibiting "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

## II. STANDARD OF REVIEW

"Once a defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." Cateret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992). " However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004); see also Carteret, 954 F.2d at 142 n. 1. "If the contents of the plaintiff's complaint conflict with

the defendant's affidavits, the district court must construe all reasonable inferences that can be drawn from the papers in the plaintiff's favor." 4 Wright & Miller, *Federal Practice and Procedure*: Civil 3d § 1067.6 (3d ed. 2002).

"A federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 436 (3d Cir.1987); see also Fed. R. Civ. P. 4(k). New Jersey's long-arm statute, embodied in New Jersey Court Rule 4: 4-4(c), "extends to the limits of the Fourteenth Amendment Due Process [Clause] protection." Carteret, 954 F.2d at 145. Accordingly, a court may exercise personal jurisdiction over a nonresident defendant if that defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

Courts may exercise personal jurisdiction under the theories of specific or general jurisdiction. See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-415 & n. 9 (1984).

> In order for specific jurisdiction to be properly exercised under the Due Process Clause, the plaintiff must satisfy a two-part test. First, the plaintiff must show that the defendant has constitutionally sufficient "minimum contacts" with the forum. [] Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). Second, for jurisdiction to be exercised the court must determine, in its discretion, "that to do so would comport with 'traditional notions of fair play and substantial justice.'" [] Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co., 75 F.3d 147, 150-51 (3d Cir.1996) ([quoting] Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

IMO Indus. Inc. v. Kiekert, 155 F.3d 254, 259 (3d Cir. 1998) (citations corrected). A

court may find that specific jurisdiction exists under the "effects test" established in Calder v. Jones, 465 U.S. 783, 789 (1984), which focuses on the minimum contacts prong of the test. IMO Indus. Inc., 155 F.3d at 260. Under the "effects test," "a court may exercise personal jurisdiction over a nonresident defendant who commits an intentional tort by certain acts outside the forum which have a particular type of effect upon the plaintiff within the forum." Id. at 261.

## III. DISCUSSION

Plaintiff asserts that there is specific jurisdiction over Defendants because: (1) Defendants allegedly have a long standing business relationship, out of which this dispute arose; and (2) Defendants allegedly committed tortious conduct directed at Lawn Doctor, a New Jersey resident. The Court finds that there is specific jurisdiction under the Calder "effects test." Accordingly, the Court does not reach Plaintiff's other arguments regarding specific jurisdiction over the Defendants.

### A. PERSONAL JURISDICTION UNDER THE CALDER "EFFECTS TEST"

In Calder v. Jones, 465 U.S. 783 (1984), the Supreme Court set forth the "effects test" for determining personal jurisdiction over nonresident defendants who allegedly committed an intentional tort outside the forum. The Court held that the state, California, had personal jurisdiction over the defendants because the "effects" of their tort were chiefly felt in California, the state where the plaintiff lived and worked. Id. at 789-90. The Third Circuit applied Calder in IMO Indus. Inc. v. Kiekert, 155 F.3d 254 (3d Cir. 1998), where it held that the Calder effects test requires the plaintiff to show that:

> (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the

> focal point of the harm suffered by the plaintiff as a result of the tort;
> [and] (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

Id. at 265-66.  To properly assess whether this Court has specific jurisdiction over the Defendants the Court must analyze the Calder "effects test" as to each intentional tort alleged.[2]  Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir.2001).

### i. Specific Jurisdiction over Branon for Tortious Interference

The first prong of the "effects test" requires that "the defendant committed *an intentional tort*."  IMO Indus., 155 F.3d at 265-66 (emphasis added).  The Third Circuit recognized in both IMO Indus. and Remick that tortious interference is an intentional tort that can confer personal jurisdiction under the Calder "effects test."  Remick, 238 F.3d at 260; IMO Indus., 155 F.3d 256-68.  Therefore, this first prong is met.

The second prong of the "effects test" requires that "the plaintiff felt the brunt of the harm in the forum such that the *forum can be said to be the focal point of the harm suffered* by the plaintiff as a result of the tort."  IMO Indus., 155 F.3d at 265-66 (emphasis added).  In Remick, the Third Circuit held that when a plaintiff is a resident of the forum state and the victim of an alleged tortious interference of contract the "brunt of the harm caused by the alleged intentional tort must necessarily have been felt by [plaintiff], as his business practice is based in [the forum state]."  Remick, 238 F.3d at 260.  To support its decision, the Third Circuit explained that,

> [a]lbeit a tort, [this claim] is necessarily related to the contract which

---

[2]Although Plaintiff asserts four causes of action, it is only necessary for the Court to analyze the claim of tortious interference with contract to determine that specific jurisdiction exists over the Defendants.

> [Remick] had entered into with [Angel] Manfredy and which is the subject of the alleged tortious interference. Remick asserts in his affidavit that he conducted the majority of his negotiation, consultation, and advice services for [Angel] Manfredy out of his Philadelphia office.  Accepting that assertion as true, it follows that the effects of any intentional conduct by the defendants designed to interfere with Remick's contractual relations with [Angel] Manfredy necessarily would have been felt in Pennsylvania.

Id.

Lawn Doctor alleges that it is the victim of an alleged intentional tort, which deprived it of hundreds of thousands of dollars in revenues.  Similar to the plaintiff in Remick, Lawn Doctor conducted consultation and advice services under the D'Eramo Franchise Agreements from its offices in the forum state.  This is evidenced by the existence of Lawn Doctor's New Jersey based 1800 number and Altstadt's Declaration describing the various telephone calls that were placed to him in New Jersey regarding the D'Eramo Franchises and their financial well being.  (See Compl. ¶ 19; Altstadt Decl. ¶¶13-16).  Furthermore, Lawn Doctor is headquartered in New Jersey.  Thus, it follows that the focal point of the harm from Branon's alleged tortious interference of contract with the D'Eramo Franchise Agreements between D'Eramo and Lawn Doctor is New Jersey.[3]  Hence, the second prong of the Calder effects test is met.

The third prong of the "effects test" requires that "the defendant *expressly aimed his tortious conduct at the forum* such that the forum can be said to be the focal point of

---

[3] It is not dispositive that the primary harm to Lawn Doctor's good will allegedly took place in the states where the D'Eramo Franchises were located.  Lawn Doctor's overall corporate goodwill was potentially damaged as a consequence of the alleged tortious conduct which caused the collapse of the D'Eramo Franchises.  Since Lawn Doctor's corporate headquarters is located in New Jersey, the forum state, it follows that New Jersey was the focal point of the harm suffered.  This notion is bolstered further by the fact that all of the lost profits and unpaid debts from D'Eramo's failed franchises are felt primarily by Plaintiff, a New Jersey corporate resident.

the tortious activity." IMO Indus., 155 F.3d at 265-66 (emphasis added). A plaintiff's mere assertion "that the defendant knew that the plaintiff's principal place of business was located in the forum [is] insufficient" to satisfy the third prong of the test. Id. at 265. In IMO Indus. the Third Circuit declined to find personal jurisdiction under the effects test where a German defendant's alleged tortious conduct appeared to have been expressly aimed at injuring a French company and not the in-forum plaintiff. Id. at 265-68. However, in Remick the Third Circuit found personal jurisdiction where the plaintiff alleged that the defendants set him up to fail in his negotiations for a boxing match and "disseminat[ed] false and defamatory information about [the plaintiff]'s skill and ability with the intent to interfere[ ] and cause harm to [the plaintiff]'s contract," with his client. Id. at 260. In Remick, the defendants were the advisors of the plaintiff's client. Id. at 252. The defendants not only participated in the formation of the contract between the plaintiff and his client, but they also negotiated deals with plaintiff, on behalf of his client. Id. at 253. There the defendants expressly targeted the plaintiff in the forum state because the two men not only knew that plaintiff worked in the forum state, but they also worked with plaintiff while he performed his services from the forum state.

Similarly, here the Defendants' alleged tortious conduct was expressly aimed at injuring Lawn Doctor in New Jersey where it performed its services. When deciding a motion to dismiss for lack of personal jurisdiction the Court must accept plaintiff's allegations as true. Carteret Savings Bank, FA, 954 F.2d at 142 n. 1. Between November 2006 and September 2007, Lawn Doctor alleges that Branon made multiple phone calls to its offices in New Jersey, some of which were made directly to Altstadt's cell phone. (Altstadt Decl. ¶¶ 14, 15). Altstadt recounts in his declaration that it was

during these telephone calls that Branon forestalled termination of the D'Eramo Franchise Agreements by misrepresenting to Altstadt how D'Eramo's business revenues were being spent.[4]  (Id. at 14-16).  Branon had a long standing relationship with Lawn Doctor that spanned many years before he sold his franchises to D'Eramo.  This meant that, just like the defendants in Remick, Branon knew that when he was speaking to Altstadt, he was speaking to a representative of Lawn Doctor, a company that provides services out of its New Jersey based corporate headquarters located in the forum state.

This case is also similar to Remick in the sense that, similar to the defendants in Remick, Branon actually did participate in the formation of the contract between Lawn Doctor and D'Eramo when he flew to Lawn Doctor's corporate headquarters in New Jersey to help get approval to sell the franchises to D'Eramo.  (See Firth Decl. ¶ 3).  This provides even more support for the contention that Branon expressly aimed his alleged tortious activity towards New Jersey and the Plaintiff.  Accordingly, these facts are sufficient to satisfy the third prong of the Calder effects test and confer personal jurisdiction over Defendants.[5]

---

[4]Plaintiff also alleges that during this time period Defendants intentionally misrepresented the D'Eramo Franchises' ability to pay Lawn Doctor monies owed, while simultaneously diverting funds away from the franchises and placing them in Branon's personal account for his own use and benefit.  (Compl. ¶ 15; Altstadt Decl. ¶ 12).

[5]Similarly, New Jersey courts have held that "a defendant who directs a fraudulent communication to a plaintiff located in New Jersey has established sufficient contacts with the state to justify personal jurisdiction." Miller v. McMann, 89 F. Supp. 2d 564, 567 (D.N.J. 2000) (citing Lebel v. Everglades Marina, Inc., 115 N.J. 317, 325-26 (1989).  In Lebel, the Court stated that: "Where a defendant knowingly sends into a state a false statement, intending that it should be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state."  115 N.J. at 325-326; see Halak v. Scovill, 296 N.J. Super 363, 370 (App. Div. 1997) ("A person who commits a tort arising out of a business dispute with a New Jersey resident and has some contacts

### ii.      Hearsay and Lack of Competent Evidence Arguments

Defendants argue in their Reply Brief that Plaintiff's assertions of tortious conduct are "based purely on hearsay" and as a consequence should not be given credence. (Defs.' Reply Br. at p. 8). To defend a motion for lack of personal jurisdiction, plaintiff bears the burden of demonstrating, by "sworn statements or other competent evidence," sufficient contacts with the forum state to support the exercise of personal jurisdiction on the defendant. Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n. 9 (3d Cir. 1984); see Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996). "There is a significant procedural distinction" between a motion to dismiss for failure to state a claim and a motion to dismiss for lack of personal jurisdiction. Id. A motion to dismiss for lack of personal jurisdiction

> is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other

---

with New Jersey in connection with that business transaction should reasonably anticipate being sued in New Jersey . . . . Furthermore . . . jurisdiction in tort actions may be premised upon a single contact with the forum if the contact results in injury to one of its residents") (citations omitted); State v. Qwest Comms. Int., Inc., 387 N.J. Super. 487, 499 (App. Div. 2006) (finding personal jurisdiction where plaintiffs asserted that defendants, a business, intentionally issued false statements about its financial health upon which plaintiff relied to its detriment).

   Similar to case in Quest Comms. Int. Inc., "[f]raudulent communications are at the center of this controversy" between Branon and Lawn Doctor. Id. Lawn Doctor alleges that Branon and Branon Industries intentionally misrepresented its intentions and ability to pay Lawn Doctor monies owed, while diverting funds away from Lawn Doctor and placing it in Branon's personal account for his own use and benefit. Further, Lawn Doctor alleges that Branon actually prevented D'Eramo from paying Lawn Doctor money owed to it under contract. This lends further support that Branon is subject to personal jurisdiction by the courts of New Jersey.

> competent evidence. . . . . [T]herefore, at no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction.

Id.

Defendants contend that Lawn Doctor has rested on its pleadings alone in defending its Motion to Dismiss for lack of Personal Jurisdiction and that the content of Lawn Doctor's accompanying declarations are unreliable hearsay that do not sustain its burden of proof in establishing jurisdictional facts. The Third Circuit has held that when deciding a motion to dismiss for lack of personal jurisdiction the plaintiff is "entitled to have its allegations taken as true and all factual disputes drawn in its favor." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004); see also Carteret, 954 F.2d at 142 n. 1. Furthermore, "[i]f the contents of the plaintiff's complaint conflict with the defendant's affidavits, the district court must construe all reasonable inferences that can be drawn from the papers in the plaintiff's favor." 4 Wright & Miller, *Federal Practice and Procedure*: Civil 3d § 1067.6 (3d ed. 2002). Here, Lawn Doctor has alleged that Branon tortiously interfered with the contract between D'Eramo and Lawn Doctor by taking managerial control over the D'Eramo Franchises to divert funds for his own benefit. (Compl. ¶ 18; see Altstadt Decl. ¶ 15). Lawn Doctor also avers that Defendant Branon made false representations to it through various phone conversations to forestall its termination of the D'Eramo Franchise agreements. (Id.)

In connection with its allegations, and to sustain its burden of establishing jurisdictional facts, Lawn Doctor has provided the declaration of Ewald Altstadt ("Altstadt"), its Vice President for Operations and Support Services and Russel Frith, President and CEO of Lawn Doctor. Both declarations contain portions of unreliable

-14-

hearsay, but to the extent that the declarations provide reliable information, the Court finds that it is sufficient to confer personal jurisdiction over the Defendants. Firstly, although brief, the Frith declaration competently demonstrates that Defendant Branon came to New Jersey in December 2003 in connection with the assignment of the Branon Franchises to D'Eramo. (Frith at ¶ 3). Secondly, the Altstadt declaration refers to multiple telephone calls that were allegedly made by Defendant Branon to Lawn Doctor in New Jersey. (Altstadt at ¶¶13-16).

The Defendants attack the reliability of the Altstadt declaration based upon its lack of specificity. In doing so, Defendants do not dispute the fact that Branon made at least some telephone calls to Lawn Doctor employees based in its New Jersey offices. Instead, they argue the number of calls made, the relevance of such calls, and the content of the conversations during the alleged calls. During oral argument, counsel for Defendants noted a discrepancy in Altstadt's declaration where he references 26 telephone calls, but then only lists dates for 18. Counsel also argued that in Altstadt's declaration he only acknowledges that a few of the 26 phone calls were made directly to him.

During the oral argument of this Motion, the Court itself recognized the scant nature of Altstadt's declaration regarding the number of calls made by Branon, to whom, and why they were placed. Accordingly, for the abovementioned reasons, the Court finds that Altstadt lacks personal knowledge as to the majority of the phone calls listed in his declaration. As a consequence, the Court can only rely on the telephone calls that took place between Defendant Branon and Altstadt himself because those are the only calls adequately supported in Altstadt's declaration.

Defendant Branon's statements in those conversations are not hearsay because Branon is a named party, and as a consequence his statements fall into the party admission hearsay exclusion. Fed R. Evid. 801(d)(2). Furthermore the Court finds that the content of the conversations corroborate and support Plaintiff's claims for the intentional tort of tortious interference, while establishing jurisdictional facts that link Defendants' alleged tortious acts to New Jersey. It is of no consequence that Branon refutes the content of his conversations with Altstadt, or disputes where Altstadt was located at the time of the calls, or who initiated the conversations that lead to the calls. Branon does not dispute the fact that the calls took place and the Court must resolve disputed facts as to the contents of the conversations in favor of the Plaintiff. See Carteret Savings Bank, FA, 954 F.2d at 142 n. 1. This, when construed with the allegations in Plaintiff's Complaint, I find sufficient proof to sustain Plaintiff's burden in establishing jurisdictional facts. Therefore, the Court finds that Plaintiff has provided sufficient evidence to defeat Defendants' Motion to Dismiss.

      C.      **TRADITIONAL NOTIONS OF FAIR PLAY AND JUSTICE**

Defendants argue that exercising personal jurisdiction over them in New Jersey would offend traditional notions of fair play and justice. "A court may exercise personal jurisdiction over a defendant so long as the exercise of that jurisdiction 'comport[s] with fair play and substantial justice.'" Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004) (quoting Burger King v. Rudzewicz, 471 U.S. 462, 476 (1985)). The Supreme Court has held that when evaluating whether traditional notions of fair play and substantial justice have been offended defendants "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."

Burger King, 471 U.S. at 477.

> The determination requires evaluation of such factors as "the burden on the defendant, the interests of the forum State, . . . the plaintiff's interest in obtaining relief, . . . the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies."

Miller v. McMann, 89 F. Supp. 2d 564, 567 (D.N.J. 2000)(quoting Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 113 (1987)).

Here, Branon asserts that he is a retiree living on fixed income in Massachusetts. He further states that he has limited resources and that the claims against him are frivolous. Moreover, he argues that if he is forced to defend against Lawn Doctor's suit in New Jersey, while he would have liked to implead Mr. D'Eramo and D'Eramo Industries, LLC pursuant to Fed. R. Civ. P. 14(a) or under Fed. R. Civ. P. 19 as a necessary party, because of the various agreements between himself and D'Eramo, which provide for the exclusive jurisdiction of Massachusetts and application of Massachusetts law, Branon is precluded from impleading D'Eramo in this action.[6] D'Eramo contends that this would be a heavy burden and require simultaneous litigation in two different forums.

Notwithstanding those arguments, the Court finds that the Defendants have not met their burden of demonstrating that jurisdiction would be unreasonable in light of the following: (1) there is no evidence of an inability by Branon either to travel to New

---

[6]Branon states that the basis for impleading D'Eramo is "a contractual obligation to indemnify Mr. Branon." (Defs.' Reply Br. p. 11). However, Defendants have not provided a specific citation to the indemnification provision in question, nor have they identified the contract where it is located. As a consequence, it is unclear to the Court how this indemnification provision applies to the present claim of tortious interference, which allegedly took place after D'Eramo took over the franchises.

Jersey or to present evidence that would have been available in Massachusetts apart from the argument that Branon is living on a fixed income and is a retiree; (2) Plaintiff resides in New Jersey; and (3) New Jersey has an interest in protecting its residents from an alleged intentional tort that was directed towards a resident in its forum.  Furthermore, even if Branon chooses to bring suit against D'Eramo for indemnification, an indemnification claim does not require compulsory joinder of a third party to the underlying dispute even though it may arise out of the same transaction or set of facts. See Temple University Hosp., Inc. v. Group Health, Inc., 413 F. Supp. 2d 420, 429 (E.D. Pa. 2005) (holding that "a defendant's right to claim contribution or indemnification against another party would give the defendant reason to implead that party pursuant to Federal Rule of Civil Procedure 14, but it does not require compulsory joinder").[7] Accordingly, the Court finds that this forum has jurisdiction over Defendants.

IV.     CONCLUSION

For the reasons stated herein,  Defendants' Motion to Dismiss for lack of Personal Jurisdiction is denied.


Dated: May 14, 2008

---

[7]See also 6 CHARLES ALAN WRIGHT, ARTHUR MILLER, MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE 2d § 1446 (2007) ("[t]he mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough"); 3 JAMES WILLIAM MOORE ET AL., MOORE'S FEDERAL PRACTICE 3d ¶ 14 .04 (2007) (noting that the test for joinder of a third-party under Rule 14(a) is not transactional and therefore differs from standards for compulsory counterclaims and cross-claims).

                                        s/ Freda L. Wolfson
                                        The Honorable Freda L. Wolfson
                                        United States District Judge